```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PROSPECT CAPITAL CORPORATION,                       :
Individually and derivatively on behalf of          :
ESA ENVIRONMENTAL SPECIALISTS, INC.,                :
                                                    :
                        Plaintiff,                  :      09 Civ. 826 (HB)
                                                    :
            -against-                               :      OPINION & ORDER
                                                    :
NATHAN M. BENDER, DAVID C. EPPLING, JACOB           :
COLE, JOHN M. MITCHELL, SHELTON SMITH,              :
SANDRA DEE COLE, MICHAEL ANTHONY                    :
HABOWSKI, DENNIS M. MOLESEVICH, TRACEY              :
HAWLEY, CHERRY BECKAERT & HOLLAND                   :
LLP, ELLIOT AND WARREN, ADKISSON,                   :
SHERBERT & ASSOCIATES, HOULIHAN SMITH,              :
CHESTER J. BANULL, and SUNTRUST BANKS,              :
INC.,                                               :
                                                    :
                        Defendants.                 :
------------------------------------------------------------------------x
```
**Hon. HAROLD BAER, JR., United States District Judge:**

Plaintiff Prospect Capital Corporation ("Prospect" or "Plaintiff") brought this multi-faceted action based on a complaint that alleged, at its core, that it was induced to issue a loan to ESA Environmental Specialists, Inc. ("ESA"), an environmental, engineering and construction firm whose officers, directors and employees conspired to siphon off money and whose accountants and other professionals had provided negligent services in connection with procurement of the loan from Prospect. The Amended Complaint, filed on February 11, 2009, alleges a complex web of interrelated and unique causes of actions as follows: (1) fraud and negligent misrepresentation against Defendant Bender; (2) substantive and conspiracy RICO claims against Defendants Bender, Eppling, J. Cole, Mitchell, Smith, Mrs. Cole, Habowski and Molesevich (the "RICO Defendants")[1]; (3) derivative claims for breach of fiduciary duties and corporate waste against Bender, Eppling, J. Cole, Mitchell and Smith (the "ESA Officers & Directors"); (4) breach of contract against SunTrust Banks, Inc.; and (5) professional negligence against each of Houlihan Smith, Cherry Bekaert & Holland LLP, Elliot & Warren ("E&W"), Adkisson Sherbert & Associates ("AS&A") and Banull (the "Professional Defendants").

---

[1] The Amended Complaint contains allegations of certain conduct by Tracey Hawley ("Hawley"), who at the relevant times was an employee in ESA's accounting department; however, while Hawley is listed as a defendant in the caption of this action, she is not specifically listed as a defendant in any of the causes of action of the Amended Complaint. However, Prospect makes clear in its RICO Case Statement that it meant to include Hawley among the ranks of the RICO Defendants.

1

All of the Defendants, other than SunTrust and Habowski,[2] have moved to dismiss the Amended Complaint as it relates to them, for numerous and varied reasons: (a) the ESA Officers & Directors, Mrs. Cole, Molesevich, Banull and E&W have moved to dismiss for lack of personal jurisdiction under Federal Rule 12(b)(2) and improper venue under Federal Rule 12(b)(3), or in the alternative to transfer venue pursuant to 28 U.S.C. § 1404(a);[3] (b) the Professional Defendants move to dismiss for lack of subject matter jurisdiction under Federal Rule 12(b)(1); and (c) all moving Defendants move to dismiss the claims against them for failure to state a cause of action under Federal Rule 12(b)(6). For the reasons set forth below, I find that venue is improper in the Southern District of New York, and thus the motions to transfer this action are granted.[4]

## I. FACTUAL BACKGROUND

The facts of this case, as alleged in the Amended Complaint and RICO Case Statement, are complicated and intricate, and need not, for the purposes of these motions, be discussed at great length here. Suffice it to say that at all times relevant to the Amended Complaint, ESA operated as an environmental, engineering and construction firm that specialized in the provision of services to government entities. Prospect alleges that beginning no later than 2005, through a variety of interrelated schemes, Defendants, who together are either officers and directors, employees, or retained professionals of the now-insolvent ESA,[5] conspired to siphon funds from ESA for their own benefit.

## II. DISCUSSION

As noted above, the Defendants have moved to dismiss the causes of action in the Amended Complaint for a variety of reasons, including on both jurisdictional and substantive grounds. Most significant to the Court are the arguments relating to (a) whether this Court may exercise personal jurisdiction over certain of the Defendants, and (b) whether the Southern District

---

[2] SunTrust filed an answer to the Amended Complaint on May 5, 2009 but never participated in any motion practice. Habowski executed a waiver of service on March 9, 2009, but has not answered or otherwise responded to the Amended Complaint and is therefore in default.

[3] Defendants Cherry Bekaert and Houlihan did not move on either of these grounds and have therefore waived these two defenses; AS&A initially moved on both bases, but withdrew their personal jurisdiction objection in its reply. Although AS&A did not expressly withdraw its venue motion, its counsel has represented that it now consents to venue in this district.

[4] Although there are certain defendants who did not move to dismiss or transfer on the basis of venue, they noted no objection to the motions in their papers and did so at oral argument only upon probing from the Court. Accordingly, as discussed in further detail below, to preserve the basic fabric of this case, the claims as against these defendants likewise will be transferred as appropriate.

[5] On August 1, 2007, ESA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of North Carolina. Pursuant to a bankruptcy court-approved sale agreement, ESA sold substantially all of its assets, including litigation claims, to Prospect.

of New York is a proper venue in which this action may be heard. The Court acknowledges that in general, the issue of jurisdiction should be resolved before venue. *See Team Obsolete Ltd. V. A.H.R.M.A. Ltd.*, 01-CV-1574 (ILG), 2002 U.S. Dist. LEXIS 10737, at *9 (E.D.N.Y. Mar. 15, 2002) (citing *Leroy v. Great Western United Corp.*, 443 U.S. 179, 180 (1979)). However, a court may nonetheless address the issue of venue "where there are sound reasons to do so." *Saferstein v. Mardinly, Durham, James, Falndreau & Roger, P.C.*, 927 F. Supp. 731, 735 (S.D.N.Y. 1996). Here, because I find that venue is improper in this district with respect to any of the moving defendants, I find that this Court may not hear this case, whether or not it has personal jurisdiction over the defendants.[6]

### A. Motions to Dismiss for Improper Venue (Rule 12(b)(3))

The RICO Defendants (other than Habowski), Banull, E&W and AS&A (the "Venue Defendants") have moved to dismiss the claims against them for improper venue under 28 U.S.C. § 1391(b) or, in the alternative, to transfer this action. All Venue Defendants other than Banull request that if the claims against them are not dismissed, they should be transferred to the Western District of North Carolina, where the vast majority of the acts and occurrences alleged took place and where ESA's bankruptcy proceeding is currently pending. Banull, on the other hand, is a solo practitioner property appraiser whose residence and business are exclusively in Pennsylvania and the allegations with respect to Banull involve his allegedly negligent appraisal of a piece of real property in Pennsylvania. Accordingly, Banull seeks severance of Count XII, the only claim against him, and transfer of that cause of action to the Eastern District of Pennsylvania. Prospect's opposition to the motion, which dedicates a mere one-page discussion to the venue issue, argues that venue is proper in this district because (a) it brought its case here, (b) a substantial portion of the events that give rise to the claims in the Amended Complaint occurred here, and (c) that transfer should be denied because the convenience of the witnesses puts it here.

#### *1. Legal Standard*

Prospect bears the burden to show that venue is proper as to each defendant for each cause of action it pleads. *City of N.Y. v. Cyco.net, Inc.*, 383 F. Supp. 2d 526, 543 (S.D.N.Y. 2005). To

---

[6] It is worth noting, however, that it is doubtful that any of the Defendants who move on personal jurisdiction grounds is subject to personal jurisdiction in New York. The majority of the Defendants had no contact with New York whatsoever, and those who did had extremely limited contacts from which, in any event, Prospect's claims do not appear to have arisen. Moreover, without deciding, I must express my sincere doubt as to the viability of Prospect's argument that RICO's nationwide jurisdiction provision, 18 U.S.C. § 1965(b), can be used to cast a broad net over all Defendants. First, that provision applies only where "justice so requires," and Plaintiff has fallen far short of bearing its burden in that regard. Further, it seems extremely unlikely that to use RICO's nationwide service provision to subject defendants as to whom no RICO claim is made to personal jurisdiction in a state with which it has no service would comport with Due Process.

decide whether dismissal pursuant to Rule 12(b)(3) is appropriate, a court must take all allegations in the complaint as true, unless they are contradicted by the defendants' affidavits, "and when an allegation is so challenged, a court may examine facts outside the complaint to determine whether venue is proper." *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. 2001) (quoting *United States Envtl. Prot. Agency v. Port Auth. of N.Y. & N.J.*, No. 00 Civ. 0714 (WHP), 2001 WL 333014, at *4 (S.D.N.Y. Mar. 30, 2001)).

The venue provision on which Prospect bases its argument that venue is proper in this district is 28 U.S.C. § 1391(b),[7] which applies in all cases such as this where jurisdiction is not based solely on diversity of citizenship. The statute provides that venue is proper in any district (1) where all defendants reside, (2) in which "a substantial part of the events or omissions giving rise to the claim occurred," or (3) in any district in which any defendant may be found, if the action cannot be brought in any other district. 28 U.S.C. § 1931(b). Prospect does not argue that any defendant – let alone all defendants – resides in the Southern District of New York, nor does it argue that any defendant can be found here or that the action cannot be brought in any other district. Accordingly, Prospect's venue argument must be premised on § 1391(b)(2), and as such venue will be proper if and only if Prospect shoulders its burden to show that "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this district.

To be sure, venue can be proper in more than one district; that is, venue is not restricted to the district with the "most substantial" connection to the events or omissions related to a claim. *See Daniel v. American Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). Nevertheless, the "substantial events or omissions" test limits the number of proper venues "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Id.* (quoting *Leroy*, 443 U.S. at 183-84) (emphasis in original).

---

[7] While Prospect bases its entire argument as to venue on 28 U.S.C. § 1391(b), in the Amended Complaint, it also used RICO's venue provision, 18 U.S.C. § 1965(a). This provision is supplemental to the general venue provision of § 1391; thus, venue may lie in accordance with either statute. *See Cyco.net*, 383 F. Supp. 2d at 543-44. Because none of the parties address this alternative basis for venue over the RICO claims, and because Prospect itself does not appear to premise the propriety of venue in this district on that statute, I need not address it here. However, it is worth noting that venue for a RICO claim is proper under § 1965(a) only where at least one defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). There can be no dispute that none of the RICO defendants resides, can be found or has an agent in this district – indeed, they are all individuals whose residence and/or business ventures are in either North Carolina, South Carolina or Pennsylvania. The phrase "transacts his affairs" has been found to be synonymous with the test for transacting business under N.Y. C.P.L.R. § 302. *See Cyco.net, Inc.*, 383 F. Supp. 2d at 541-42. For venue to be proper under that subsection of § 1965, a defendant must have "transact[ed] his affairs" in the district at the time the complaint was filed. *See, e.g.*, *Gates v. Wilkinson*, 01 Civ. 3145 (GBD), 2003 U.S. Dist. LEXIS 9417, at *5 (S.D.N.Y. June 4, 2003). As will be discussed in detail, very few of the Venue Defendants transacted any business in New York at all, and those who did, the allegations as to their contact with New York was limited, sporadic and extended no further than mid-2007. Accordingly, there is no indication that any defendant was "transact[ing] his affairs" in January 2009, when this action was filed.

Plaintiff's venue argument is based on the contention that Prospect has its principal office in New York City and that it was solicited to provide the loans and performed its due diligence in this district. Thus, Prospect pulls itself up by its own bootstraps and argues that this district is proper because it is present here. Unfortunately for Prospect, the Second Circuit recently has made clear that when a court examines the question of whether venue in a forum is proper, it must focus on where the *defendant's* acts or omissions occurred. *See, e.g.*, *Daniel*, 428 F.3d at 432; *see also Woodke v. Dahm*, 70 F.3d 983-985 (8th Cir. 1995) (explaining that "by referring to 'events and omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff") (cited with approval in *Daniel*, 428 F.3d at 432). Accordingly, the Court turns to the alleged acts and omissions of each of the Venue Defendants to determine whether venue in this district is proper as to any of them.

### 2. RICO Defendants

The core allegations of the Amended Complaint are that the RICO Defendants conspired to and did violate RICO through commission of predicate acts of mail and wire fraud. Specifically, Prospect alleges that (1) in January and February 2005 and again in February and March 2006, Charles and Mrs. Cole used the mails and wires to negotiate, finalize and close the "improvement loan" and the "construction loan" on the Baxter Property; (2) in July 2006, Habowski submitted his fraudulent invoice and made other wrongful payments to ESA through the mails and wires; (3) between December 2006 and May 2007, the ESA Officers & Directors used the mail and wires to transmit numerous financial documents, including the Confidential Offering Memorandum, to Prospect; (4) ESA's wrongful payments to CEP in 2006 and 2007 were made by mail; (5) fraudulent invoices from Molesevich to ESA were sent by mail and wires; and (6) the RICO defendants used the wires to negotiate, finalize and close the Credit Agreement with Prospect and the amendments thereto. Prospect further alleges that on the day the Credit Agreement closed, ESA caused funds to be wired from New York to North Carolina and Pennsylvania to pay off previous loans made to CEP. The only allegation that underlies the RICO claims that involves any acts or omissions in this district is ESA's wiring of funds into North Carolina and Pennsylvania; however, there is no allegation as to which, if any, of the ESA Officers & Directors or RICO Defendants was responsible for the transfer, and in any event in the context of the entire RICO claim, a single wire transfer of funds is not a "substantial act" sufficient to confer venue. The allegations thus make plain that the substantial events that gave rise to the RICO causes of action

5

took place in North Carolina and Pennsylvania. A closer examination of each of the RICO Defendants' acts and omissions brings this conclusion into even sharper focus:

*(a)* Bender is alleged to reside in Fort Mill, South Carolina. At all times relevant to the Amended Complaint, he was the President and a director of ESA, a North Carolina company. Bender is alleged also to have contacted Prospect in New York on 200 occasions by email, 40 occasions by telephone and participated in regular conference call with Prospect between April 2007 and June 2007. *See* Affidavit of J. Barry ("Barry Aff.") ¶ 4-7. Bender also visited this district to meet with Prospect on February 13, 2007, March 15, 2007 and July 3, 2007. *Id.* ¶ 13.

*(b)* Eppling is alleged to reside in Jacksonville, Florida. At all relevant times, he was the Marketing Procurement Officer and a director of ESA. Prospect alleges that Eppling contacted it in this district at least 100 times by email and 25 times by telephone, and participated in regular conference calls between September and December 2007. *See* Barry Aff. ¶ 6. Eppling also traveled to New York on March 15, 2007. *Id.* ¶ 9.

*(c)* J. Cole is Charles Cole's brother and is alleged to reside in Pennsylvania. At all relevant times, he was Vice President of Operations of ESA. Prospect alleges that J. Cole contacted it by email at least 25 times and by phone 8 times; J. Cole also allegedly participated in regular conference calls between October and December 2007 and traveled to New York on February 13, 2007. *See* Barry Aff. ¶ 5, 10.

*(d)* Mitchell is alleged to reside in Charlotte, North Carolina. Mitchell became Chief Financial Officer of ESA in approximately April 2007. Mitchell alleged to have contacted Prospect in this district by email 400 times, and on at least 50 occasions by phone, and he participated in regular conference calls with Prospect between January and March 2008. *See* Barry Aff. ¶ 8, 13-14.

*(e)* Smith is alleged to reside in North Carolina. At all relevant times, Smith was Comptroller of ESA. Neither the Amended Complaint, RICO Statement nor Barry Affidavit contains any allegations of any acts or conduct by Smith in this district.

*(f)* Hawley is alleged to reside in North Carolina. At all relevant times, Hawley was an employee of ESA in its accounting department. Prospect alleges that Hawley contacted it by email at least 40 times and by phone 30 times, and participated in regular conference calls with Prospect between January and March 2008. *See* Barry Aff. ¶ 12, 14.

*(g)* Mrs. Cole is a homemaker alleged to reside in Abilene, Texas. Mrs. Cole is allegedly a principal of CEP, which are North Carolina companies with their principal places of business in

6

North Carolina. Neither the Amended Complaint nor the RICO Case statement contains any allegations that ties Mrs. Cole's acts or omissions to this district. As is set forth in the Declaration of Sandra Dee Cole ("Cole Decl."), Mrs. Cole has no contacts with this district, nor has any of the alleged RICO enterprises with which Mrs. Cole is alleged to be associated (CEP and Seedco). *See* Cole Decl. ¶ 12-13. Neither the Amended Complaint, RICO Statement nor Barry Affidavit contains any allegations of any acts or conduct by Mrs. Cole in this district.

*(h)* Molesevich is alleged to reside in Mount Carmel, Pennsylvania. Molesevich is alleged to be the sole shareholder of Molesevich Construction Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania. He is also alleged in the RICO Case Statement to be President of the Seedco entities, which are organized under the laws of either Pennsylvania or Delaware with a principal place of business in Pennsylvania. Molesevich has no contacts with this district; rather, he performs local construction projects and has never engaged in business outside of Pennsylvania. *See* Declaration of Dennis Molesevich ("Molesevich Decl.") ¶ 6. With respect to the allegations against him, Molesevich did construction on the Parent Center located in Northumberland County, Pennsylvania, for which he submitted invoices to Charles Cole in North Carolina. *Id.* ¶ 7. These invoices were paid by moneys sent to Molesevich from North Carolina by individuals associated with ESA, as well as by a law firm called Varano & Cole, located in Northumberland County. *Id.* ¶¶ 7-8. At no time was Molesevich aware of the business relationship between Prospect, Charles Cole and ESA, nor did he ever have any dealings directly with Prospect. *Id.* ¶ 9. Neither the Amended Complaint, RICO Statement nor Barry Affidavit contains any allegations of any acts or conduct by Molesevich in this district.

Viewed in context of this entire case, the telephone calls and emails by Bender, Eppling, J. Cole and Hawley into the Southern District of New York were only an insignificant part of the acts or omissions giving rise to the claims against these Defendants. *See Daniel*, 428 F.3d at 434. Thus, they are insufficient to afford venue in this district under § 1391(b)(2). Moreover, the majority of the regular calls and visits that Prospect alleges underlie its claims against these defendants occurred after the Credit Agreement closed and after ESA filed for bankruptcy. Thus, it is difficult to see how they could form the basis of a "substantial part" of the acts or omissions that give rise to Prospect's claims, as those claims all arose *before* any of the conduct alleged. There are absolutely no contacts with this district alleged for any of the remaining RICO Defendants, and thus venue is improper as to the claims against them as well.

### 3. E&W

The only cause of action brought against E&W is for professional negligence. E&W is alleged to be a professional liability company with its address in North Carolina. Neither the Amended Complaint, RICO Statement nor Barry Affidavit contains any allegations of any acts or conduct by E&W in this district. Indeed, E&W's services were performed wholly within North Carolina on behalf of a North Carolina client. As such, there is no basis to find that venue is proper as to the single cause of action alleged against E&W.

### 4. AS&A[8]

The only cause of action brought against AS&A is for professional negligence. AS&A is a professional corporation incorporated in North Carolina. *See* Affidavit of William R. Sherbert ("Sherbert Aff.") ¶ 5. AS&A dissolved on December 31, 2007; until that time, it had its principal place of business in Charlotte, North Carolina. In or about May 2006, AS&A was engaged by ESA to provide certain accounting services. *Id.* ¶ 6. These services were performed in North Carolina and were provided solely to ESA. *Id.* ¶ 8. AS&A was not aware of Prospect or its relationship with ESA, and at not time did AS&A provide any accounting services to Prospect. *See id.* ¶ 9. Prospect alleges that AS&A contacted Prospect by telephone on three occasions to discuss write-offs and adjustments related to financial statements that it prepared in connection with Prospect's loans to ESA. *See* Barry Aff. ¶ 29. Here, this minimal contact with Prospect is certainly not sufficient to confer venue over the sole claim against AS&A, *Daniel*, 428 F.3d at 434; rather, like E&W, it is clear that AS&A's services were rendered wholly within North Carolina on behalf of a North Carolina client, and there is therefore no basis for venue over this claim in this district.

### 5. Banull

The only cause of action brought against Banull is for professional negligence. Banull is alleged to reside in Scranton, Pennsylvania. Banull has never worked in New York, and the two appraisals that he performed on behalf of his client Seedco was for property in Pennsylvania. *See* Affidavit of Chester J. Banull ("Banull Aff.") ¶ 15-17. In connection with those appraisals, Banull communicated with Seedco personnel in Pennsylvania and North Carolina only. *See id.* ¶ 19. Neither the Amended Complaint, RICO Statement nor Barry Affidavit contains alleges any acts or conduct by Banull in this district. Rather, Banull's services were rendered solely in Pennsylvania

---

[8] As noted above, AS&A's opening brief contained arguments in support of dismissal on both personal jurisdiction and venue grounds. In its reply, AS&A expressly withdrew its objection to personal jurisdiction. It did not, however, withdraw its venue argument until oral argument, when its counsel represented that it consents to venue in this district.

on behalf of a Pennsylvania client; if he had contact with any other entity outside of Pennsylvania, it was with ESA and/or its employees in North Carolina, and not with Prospect in New York.

\* \* \*

The nub of the Amended Complaint involves the alleged siphoning off of funds from ESA and the retention of professionals to secure loans from Prospect, loans they knew or should have known were destined for a defunct entity. Virtually no conduct by any Venue Defendant actually occurred in or was directed to this district. Accordingly, I conclude that venue is improper in this district under Federal Rule 12(b)(3).

**B.     Dismissal or Transfer of Venue**

When a court finds that venue is improper in the district in which it sits, it has broad discretion to determine whether to dismiss the action or transfer it to a district in which venue would be proper. *See Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993); *see also Murphy v. Bradley*, No. 3:03CV714(DJS), 2004 U.S. Dist. LEXIS 1074, at \* (D. Conn. Jan. 16, 2004) (quoting *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371-72 n.3 (2d Cir. 1966)) ("[W]here the motion asks only that the suit be dismissed, the court may properly, sua sponte, order it transferred [pursuant to 28 U.S.C. § 1406(a)]."); *see also Songbyrd, Inc. v. Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)). A court's discretion in deciding whether to dismiss or transfer under § 1406(a) is informed by, *inter alia*, the convenience of the parties, ease of access to sources of proof, and the desirability of expeditious litigation and concerns of judicial economy. *See Cavit Cantina Viticoltori Consorzio Cantine Sociali del Trentino Societa Cooperativa v. Browman Family Vineyards, Inc.*, 09 Civ. 2192 (JSR), 2009 U.S. Dist. LEXIS 8889, at \*14 (S.D.N.Y. Sept. 28, 2009). Moreover, as several courts have noted, in cases such as this where there are open motions that go to substantive issues that relate to the merits of a claim, transfer is preferable to dismissal so that the transferee court can address the substantive claims. *See, e.g.*, *Pardy v. Gray*, No. 06-CV-6801, 2007 U.S. Dist. LEXIS 45428, at \*12 (E.D.N.Y. June 21, 2007); *Andrade v. Chojnacki*, 934 F. Supp. 817 825 (S.D. Tex. 1996) (quoting *Gold v. Scurlock*, 290 F. Supp. 926, 929 (S.D.N.Y. 1968)).

With respect to the Venue Defendants, it is plain that all claims other than the professional negligence claim against Banull belong in the Western District of North Carolina. With respect to Banull, it appears that severance of Claim XII is appropriate so that the claim can be transferred to

the Eastern District of Pennsylvania.[9] Severance of claims is governed by Rule 21 of the Federal Rules of Civil Procedure. The relevant factors to consider to determine whether severance is appropriate are: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice will be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 247 F.R.D. 420, 424 (S.D.N.Y. 2007). Courts often sever claims against certain defendants to accomplish transfer to venues where adjudication of the claims is appropriate. *See, e.g.*, *Wyndam Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968); *Dover Ltd. v. Assemi*, No. 08 Civ. 1337 (LTS) (JCF), 2009 U.S. Dist. LEXIS 70527, at *10-11 (S.D.N.Y. Aug. 5, 2009). Severance of discrete claims "is particularly appropriate where, as here, a small party would be forced to participate in a case in which their claims are yoked to much larger claims involving" numerous witnesses and substantial discovery. *Adelphia Recovery Trust v. Bank of Am.*, 05 Civ. 9050 (LMM), 2009 U.S. Dist. LEXIS 39373, at * (S.D.N.Y. Mar. 5, 2009). Here, the only claim against Banull is based on an allegation that he negligently appraised real property in Pennsylvania. This claim does not arise out of the same facts as the claims against any of the other Defendant, nor does it present similar factual or legal issues. Moreover, Banull, as a sole proprietor, would likely be prejudiced by the significant discovery and lengthy proceedings that are likely to come of Plaintiff's RICO claims, and thus severance promotes judicial economy. Accordingly, the sole claim against Banull will be severed and transferred to the Eastern District of Pennsylvania.

The court having determined that transfer is appropriate for each of the moving Venue Defendants, the question remains as to how to address the defendants who did not move on this ground. Here, both Cherry Bekaert and Houlihan[10] have waived the defense of improper venue by failing to raise it in their first response to the Amended Complaint. SunTrust has not waived the defense, as it was raised in SunTrust's answer as an affirmative defense. However, none of the non-moving Defendants, having notice of the Venue Defendants' motion, voiced any objection to

---

[9] Although Banull did not expressly brief the issue of whether severance is appropriate in his opening papers, a court may order severance of a party or claim under Rule 21 of the Federal Rules of Civil Procedure *sua sponte*. *See* Fed. R. Civ. P. 21 (noting that a court may sever a claim or party "[o]n motion or on its own"); *Deajess Med. Imaging, P.C. v. Allstate Ins. Co.*, No. 03 Civ. 3916 (LTS)(MHD), 2004 U.S. Dist. LEXIS 17125, at *17 (S.D.N.Y. Aug. 27, 2004).

[10] Again, AS&A took the surprising position at oral argument that it consents to venue in the Southern District of New York, notwithstanding its having made a motion under Rule 12(b)(3) and having failed to expressly withdraw that motion in any of its papers. In any event, based on the motion that the Court understands AS&A to have made, I have found that venue is improper as to AS&A, as discussed above.

transfer in their papers or otherwise; indeed, the only indication of any such objection was made upon the Court's questioning at oral argument.[11] This new concern, having been expressed for the first time at oral argument, need not be considered here. *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008); *accord Smith v. Cuomo*, 306 Fed. Appx. 645, 647 (2d Cir. 2009); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 300 (2d Cir. 2006).

Even if the Court were to assume that venue would be proper as to the three non-moving Defendants, 28 U.S.C. § 1404(a) grants the district court the authority to transfer a claim or action *sua sponte*, even if the defense of improper venue has been waived. *See, e.g.*, *Guccione v. Harrah's Marketing Servs. Corp.*, 06 Civ. 4361 (PKL), 2009 U.S. Dist. LEXIS 65388, at * 5 n.5 (S.D.N.Y. July 29, 2009); *see also Lead Indus. Ass'n v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n. 17 (2d Cir. 1979). Under § 1404(a), a court may, "[f]or the convenience of the parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought."[12] The factors the court should consider include: (1) the convenience of the witnesses; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of relevant documents and relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. *Emerging Vision, Inc. v. For Eyes Optical Co.*, 06 Civ. 5823, 2009 U.S. Dist. LEXIS 26493, at *10 (S.D.N.Y. Mar. 16, 2009) (citing, *inter alia*, *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006)). Taking these factors into account – and especially considering that it appears the vast majority of witnesses (both party and non-party) are located in and around North Carolina; the locus of operative facts is in North Carolina, where the Defendants' wrongdoing is alleged to have occurred; the difficult questions relating to choice of law and the interaction of this

---

[11] The Court specifically asked whether any of the non-moving Defendants objected to transfer, to which counsel for Defendants Cherry Bekaert, Houlihan and AS&A responded that they did object; counsel for SunTrust did not make any response to the Court's question.

[12] With respect to whether this action "could have been brought" in the Western District of North Carolina, it is worth noting that at oral argument, Prospect's counsel expressly conceded that all of its claims could be litigated in North Carolina. *See* Transcript of Oral Argument at 30:8-9 ("Could this be tried in North Carolina? Absolutely. Could it? Of course. We're not denying that North Carolina could be a proper venue.") Indeed, the only impediments that Prospect noted with respect to transfer to North Carolina is the potential objection, unarticulated by any of the defendants, that Defendants Habowski and Molesevich might not be subject to personal jurisdiction there. Habowski has defaulted and thus has abdicated his ability to object to personal jurisdiction. Molesevich, though he is a Pennsylvania resident, allegedly directed much of his activities toward companies that are alleged to be RICO enterprises and had significant contact with ESA and the ESA Officers & Directors, and thus I see no reason why he should not be subject to personal jurisdiction in North Carolina.

case with ESA's pending bankruptcy; and the fact that the claims against the Venue Defendants will also be transferred – this Court finds, in its broad discretion, that transfer of all claims (other than the claim against Banull) to the Western District of North Carolina is warranted. This conclusion is bolstered by considerations of judicial economy, as the North Carolina court will then be in a position to decide whether any of the claims against any of the Defendants can survive a motion to dismiss under Rule 12(b)(6).

### III. CONCLUSION

For the foregoing reasons, the Defendants' motions to transfer venue are GRANTED. The Clerk of this Court is instructed to sever Count XII for professional negligence against Banull and transfer it to the Eastern District of Pennsylvania. The Clerk is further instructed to transfer the remaining causes of action against all Defendants to the Western District of North Carolina. Finally, the Clerk of this Court is directed to remove this case from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**December 21, 2009**

_____
U.S.D.J.